MEMORANDUM OPINION AND ORDER
PER CURIAM.
I. Introduction
On February 1, 1998, Elena Condon (Dupris), Appellant, gave birth to a daughter, I.R. Dupris. The child’s (natural) father is Jeremy Dupris. Both mother and father are enrolled members of the Cheyenne River Sioux Tribe and residents of the Cheyenne River Sioux Reservation. On February 20, 1998, the parents transferred physical custody of their daughter 1.R.C. to Douglas and Cynthia Block (Ap-pellees) of Mobridge, South Dakota. The Blocks are non-Indians and reside outside the exterior boundaries of the Cheyenne River Sioux Reservation. On this same day, both Ms. Condon Dupris and Mr. Dupris signed a “Voluntary Consent to Termination of Parental Rights” form before a notary public.
A “custody hearing” was noticed for March 30, 1998. There is no record of what, if anything, transpired at this hearing or indeed whether any hearing actually took place. Ms. Condon Dupris and Mr. Dupris, who were not represented by counsel at that time, did not appear. No written order (or entry of judgment) relative to termination of parental rights appears in the record. Judge Chasing Hawk however did sign an order1 granting “temporary custody” of I.R.C. to Douglas and Cynthia Block on March 31, 1998.
On April 6, 1998, Douglas and Cynthia Block filed a petition of adoption. On April 27, 1998, Elena Condon Dupris filed a written petition to withdraw her consent to the termination of her parental rights. On May 4, 1998, Ms. Elizabeth Holmes of Dakota Plains Legal Services filed a notice of appearance as counsel for Ms. Dupris. There was a hearing on the petition before Judge Chasing Hawk on June 4, 1998. Both parents were represented by counsel.[1] On December 10, 1998, Judge Chasing Hawk issued a written order[2] (with *48 findings of fact and conclusions of law) that denied the petition to revoke consent. Ms. Elena Condon Dupris subsequently filed a timely notice of appeal. At all relevant times, the infant I.R.C. has remained in the physical custody of Douglas and Cindy Block with limited visitation by Elena Con-don Dupris.
Appellant also filed a timely (and thrice amended) designation of record. When Judge Chasing Hawk left the bench (after long and distinguished service), the case was transferred to Judge Bluespruce. Subsequently, pursuant to Appellant’s motion for a stay, Judge Bluespruce issued a stay.[3] A telephonic hearing on the various motions[4] as well as the underlying substantive appeal was held on June 25, 1999.
II. Issues
The various issues identified by the parties are all subsumed within a single, dis-positive issue, namely whether Appellant’s consent to termination of her parental rights is valid as a matter of law.
III. Discussion
While much of the argument in the parties’ briefs and at (telephonic) oral argument focused on the validity of Appellant’s withdraival of consent,[5] this misconceives the prior and dispositive issue of whether the consent is valid in the first instance. The answer to that question is no and therefore there is no need to focus on the issue of valid withdrawal of consent.
The “Consent to termination of parental rights” form signed by Appellant is invalid for two overlapping yet complementary reasons. Appellant correctly argues that Section 10.02(B) of the Cheyenne River Sioux Tribe’s Children’s Code governs placements outside the Cheyenne River Sioux Reservation as in the case at bar and it provides in relevant part:
*49 Where placement outside the Cheyenne River Sioux Reservation is contemplated, a consent of relinquishment shall conform with the provisions of the Indian Child Welfare Act, 25 U.S.C. § 1913.
25 U.S.C. $ 1913(a) specifically states:
Where any parent or Indian custodian voluntarily consents to a foster care placement or to termination of parental rights, such consent shall not be valid unless executed in writing and recorded before a judge of a court of competent jurisdiction and accompanied by the presiding judge’s certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian. The court shall also certify that either the parent or Indian custodian fully understood the explanation in English or that it was interpreted into a language that the parent or Indian custodian understood. Any consent given prior to, or within ten days after, birth of the Indian child shall not be valid.
Appellant’s “consent” in this matter—as acknowledged by both parties—was not “executed in writing before a judge of a court of competent jurisdiction and accompanied by the presiding judge’s certificate that the terms and consequences of the consent were fully explained in detail and were fully understood by the parent or Indian custodian.” It is therefore void and inoperable as a matter of law.[6]
While the above analysis is dispositive, there is a somewhat overlapping yet complementary issue presented by Section 11.02(G) of the Cheyenne River Sioux Children’s Code which provides:
A consent to adoption may be withdrawn at any time prior to entry of an Order of Adoption, and only upon permission of the Court for the reason that the best interests of the child will be served by such withdrawal. However, if within six (6) months from the date of consent it can be shown beyond a reasonable doubt that the consent to adoption was given as a result of fraud, coercion, or duress, such consent may be withdrawn during such period.
Unlike 25 U.S.C. $ 1913, the provisions of section 11.02(G) of the Children’s Code appear to grant the Children’s Court some discretion to decline withdrawal of consent where not in the best interests of the child. Thus, an interesting statutory interpretation question is posed as to whether proceedings, like this one, contemplating placement of a minor child outside the reservation are governed by section 11.02(G) of the Children’s Code or pursuant to section 10.02(B) of the Children’s Code by the provisions of section 25 U.S.C. § 1913.
Fortunately, this Court need not to resolve this particular question of statutory construction since it finds that the “Voluntary Consent to Termination of Parental Rights” signed by Elena Condon Dupris was invalid from the beginning. There is no dispute that the form[7] was signed by *50 Elena Condon Dupris before a notary public as suggested on the form itself. The problem with this procedure is that section 11.02(F) of the Cheyenne River Sioux Children’s Code expressly provides:
Consent of a parent [to termination of parental rights and adoption] shall be taken by the Court and shall be accomplished by signing a consent form to be provided by the Court which explains the consequences of consenting to the adoption. The Court shall certify that the parent fully understood the explanation in English or that it was interpreted into a language that the parent understood. For parents residing outside the Reservation, the consent form shall be executed before a Notary Public who must certify that the consent of the parent appears to be freely given in order for such consent to be valid.
There is no dispute that at all times relevant to this proceeding Elena Condon Du-pris was and is an enrolled member of the Cheyenne River Sioux Tribe and a resident of the Cheyenne River Sioux Reservation. Thus, under the clear language of section 11.02(F), her consent to termination of her parental rights and to adoption had to be taken before the Children’s Court, not by a notary public. Furthermore, for the consent to be valid the Children’s Court was required to certify that she fully understood the consequences of her consent in either English or in her native language.
No such certificate from the Children’s Court of the type required by section 11.02(F) appears in the record and there is no dispute that the consent was not. taken by the Children’s Court, having been signed instead before a notary public. When asked at oral argument how the consent in question complied with section 11.02(F), counsel for the Appellees indicated that it did not. Thus, the consent upon which the placement of the minor child with the-Appellees rests was invalid as a matter of law under both Sections 11.02(F) and 10.02(B) of the Children’s Code. In such circumstances any debate about the requirements for the withdrawal of the consent becomes unnecessary. A legally invalid consent does not require any withdrawal to render it ineffective because it has never been effective as a matter of law.
While the parties agree that section 11.02(F) of the Cheyenne River Sioux Children’s Code was not specifically argued at the hearing before Judge Chasing Hawk, the parties do agree that the broad question of “consent” was raised. This is sufficient to preserve the issue on appeal. In order for an issue to be preserved on appeal, it must only raised in the trial court even if it is not supported by the correct legal theory or citation.
A case such as this clearly holds the potential for trauma and heartbreak but as noted by the U.S. Supreme Court in the seminal case of Mississippi Baud of Choctaw Indians v. Holy field:
The law cannot be applied so as automatically to “reward those who obtain custody, whether lawfully or otherwise, and, maintain it during any ensuing (and protracted) litigation.” [8]
Appellant’s “consent” fails as a matter of law prior to the issue of whether it was properly revoked. As a matter of law— and however difficult, even painful, this might be for Appellees—Appellant’s consent never was valid. It was not executed *51 in accordance with Cheyenne River Sioux Tribal law (incorporating the Indian Child Welfare Act) and therefore never had the force of law. This Court is not without sensitivity to the emotional hardship this decision (potentially) imposes. Yet any decision of the Court in this matter holds such potential for one or the other parties. We have striven to understand this predicament with empathy, yet not shirk our duty to apply the law with fairness and humanity.
IV. Conclusion
For the above stated reasons, the decision of the trial court is reversed and remanded with express direction that the minor child Iris Rose be forthwith returned physically and permanently to the Appellant, her biological mother, Elena Condon Dupris.
Ho hecetu yelo.

IT IS SO ORDERED.

. There is no transcript of the hearing because the tape recorder malfunctioned.

. Judge Chasing Hawk's order of December 7, 1998 presents several difficulties. It concludes that "said child is a Child In Need of Care, as that term is described in Chapter *48 VII, in the Children's Code of the Cheyenne River Sioux Tribe.” Since the action before Judge Chasing Hawk was a petition to revoke consent in a private adoption proceeding, he was clearly without authority—as no action had been initiated by the Cheyenne River Sioux Tribe—to make any finding relative to child in need of care status. In fact to do so raises serious due process concerns. The status of the child was not an issue properly before the court. Similarly, his conclusion that it would be “contrary to the best interests of the child and the tribe to be returned to the mother” is not appropriate in a revocation of consent hearing. If indeed there was, or is today, concern about the well being of the minor child, an appropriate action should be brought immediately by the Cheyenne River Sioux Tribe in tribal court to determine if I.R.C. is a child in need of care.

.Although not clearly labeled as such, the parties concede that this was the intended effect of Judge Bluespruce’s order of April 24, 1999. Judge Bluespruce also issued subsequent orders on May 12, 1999 (with findings of fact and conclusions of law) and May 21, 1999. All of these orders seek to establish visitation for Ms. Condon Dupris with the ultimate goal of returning physical custody of I.R.C. to her natural mother "after a transition period has taken place.” While the issue of whether the trial or appellate court maintains jurisdiction over the physical custody of a minor child is by no means uncomplicated or subject to a uniform rule across other jurisdictions, this court remains concerned about the trial court’s actions in this regard. Although this issue is not properly before the court, it is clear that Judge Bluespruce’s orders potentially go beyond the relief that is permissible when a stay is granted and improperly intrude on the jurisdiction of the Court of Appeals. Stays are limited to maintaining the status quo not advancing resolution of the litigation. This remains an issue for increased sensitivity at both the trial and appellate level.

. All motions were disposed of by this Court in an Order issued on June 28, 1999.

. Indeed this was the entire focus of Judge Chasing Hawk’s order of December 10, 1998.

. If the consent was valid (which it is not), it would nevertheless be revocable pursuant to 25 U.S.C. § 1913(c) which provides:
In any voluntary proceeding for termination of parental rights to, or adoptive placement of, an Indian child, the consent of the parent may be withdrawn for any reason at any time prior to the entry of a final decree of termination or adoption, as the case may be, and the child shall be returned to the parent. [Emphasis added]

. If it is true (as it appears to be) that this consent form was one provided by the clerk’s office of the Cheyenne River Sioux Tribal court, it needs to be immediately withdrawn and redrafted to conform with the requirements of sections 10.02(B) and 1 1.02(F) of the Cheyenne River Sioux Children’s Code that became law in 1993. Such inadvertent over *50 sight in the provision of legal forms does not however excuse use of such a form by a party represented by counsel.

. 490 U.S. 30, 54, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (footnotes omitted).